IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-17-283 |
| | * | |
| TYRONE PIERCE | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## **MEMORANDUM**

Tyrone Pierce is a sixty-three-year-old federal prisoner, currently incarcerated at Fort Dix FCI, serving a 96-month sentence for the use of a firearm during a crime of violence. Now pending is Pierce's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECFs 45, 50). Pierce seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion, (ECF 54), and Pierce has replied, (ECF 55).[1] For the reasons explained below, the motion will be denied.

## **BACKGROUND**

On August 24, 2016, Pierce entered the Bank of Ocean City, a federally insured financial institution located in Ocean City, Maryland, wearing a fake beard and carrying a concealed semi-automatic handgun. After entering the bank, Pierce removed the handgun from his person, pointed it at one of the bank's tellers, and demanded money. He threatened to shoot the teller if she did not comply with his demand. Pierce left the bank with just over $9,000. A DNA specimen was obtained from a glove Pierce left at the bank; that specimen matched an existing DNA sample from Pierce obtained after he was convicted for a separate bank robbery in 1999. (ECF 25, Plea Agreement, at 8). In April 2018, Pierce pled guilty to one count of brandishing a firearm during a crime of

---

[1] Through counsel, Pierce supplemented his motion with updates on conditions at Fort Dix and his own health condition. (ECF 56, 57, 58, 59, 61, 63, 64). The court considers these submissions.

1

violence, in violation of 18 U.S.C. § 924(c). (*Id.* at 1). The parties stipulated pursuant to Federal Rule of Civil Procedures 11(c)(1)(C) that a sentence between 84 and 120 months was appropriate, (*id.* at 4), and the court sentenced Pierce to 96 months of imprisonment with a five year term of supervised release, (ECF 34, Judgment, at 2–3). Pierce has been incarcerated since January 26, 2017. (*Id.* at 2).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Pierce submitted a request to his warden for compassionate release on April 2, 2020, based on underlying medical conditions making him particularly susceptible to serious illness related to COVID-19. (ECF 52-3). He has not received a response. The government does not contest that Pierce has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Pierce's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Pierce argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (a history of smoking and chronic hepatitis C) constitutes an "extraordinary and compelling reason" to reduce his sentence. (ECF 52 at 4). According to the Centers for Disease Control ("CDC"), Pierce's history of smoking increases his risk of severe illness related to COVID-19, *see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020), and a history of hepatitis C may indicate a risk of liver disease, which may in turn increase Pierce's risk of severe illness from COVID-19, *see id*. Further compounding the risk to Pierce is his age*, see Coronavirus Disease 2019 (COVID-19): Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/older-adults.html (updated Dec. 13, 2020) ("The risk for severe illness with COVID-19 increases with age[.] . . . For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.").

The risk to Pierce of illness is not at all speculative. FCI Fort Dix has for months experienced a severe COVID-19 outbreak—over half of inmates there have at some point tested positive for the virus. *See COVID-19: Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last accessed Jan. 28, 2021) (reporting 53 inmates currently positive for COVID-19 and 1,425 recovered); *FCI Fort Dix*, BOP, https://www.bop.gov/locations/institutions/ftd/ (last accessed Jan. 28, 2021) (reporting population of 2,723 inmates). In October, Pierce himself tested positive for COVID-19 (*see* ECF 58). He experienced mild symptoms which largely resolved by the end of November. (*See* ECF 64). Pierce maintains that in the last few weeks, however, he has begun experiencing mild COVID-19 symptoms again, including chest pain, shortness of breath, body aches, and a cough. (*See id.*). It does not appear that Pierce has been retested for COVID-19, and counsel reports that Pierce has not received medical care at Fort Dix since November. (*Id.*). Because there is a "potential for rapid deterioration in a COVID-19 patient's condition," *United States v. Rachal*, 470 F. Supp. 3d 63, 65 (D. Mass. 2020), and Pierce's age and his underlying medical conditions signal an increased danger of severe illness, the court finds that Pierce has demonstrated an extraordinary and compelling reason for his release.

Pierce's risk factors and his current COVID-19 symptoms do not, however, end the court's inquiry. The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the § 3553(a) factors weigh against granting relief.

The court must consider Pierce's history and characteristics and also the need for the sentence imposed to protect the public from further crimes. 18 U.S.C. §§ 3553(a)(1), (a)(2)(C). While no one was physically injured in the course of Pierce's crime, his use of a firearm to threaten a person's life for his own financial gain was and is deeply troubling, and it was not the first time he engaged in such conduct. In 1999, at the age of forty-two, Pierce committed an armed robbery of a different bank, and he has been involved in two additional armed robberies, one when he was twenty-six, and one when he was sixteen. (ECF 28, Presentence Report, at 5–6). While age is often a sign that a prior offender poses a lesser degree of danger to the public, that is not the case for Pierce, who has continued a pattern of armed robbery into his late fifties. Unfortunately, this most recent offense appears to have been driven primarily by the economic strain of Pierce's relapse into a long-battled heroin addiction. (ECF 52 at 9). Pierce has maintained sobriety during his incarceration, and he has the support of his adult children in sustaining sobriety, but even his motion contemplates a risk that he will relapse. (*Id.*). The court remains concerned by the relative recency of Pierce's offense and by his consistent return to armed robbery.

The court must also ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). Pierce has served 48 months, half of his 96-month sentence and less than the mandatory minimum sentence for convictions involving brandishing a firearm during a crime of violence.

Additionally, the court weighs Pierce's claims that the BOP is not providing him adequate medical care. *See* § 3553(a)(2)(D). Pierce notes that he has not been seen by a medical professional for his COVID-19 symptoms and that his hepatitis C has not been monitored in the last year to determine whether he has an active infection, which could signal a greater risk of liver disease or liver damage. (ECF 52 at 11; ECF 64). The court takes these concerns seriously. There is a risk that Pierce "may not be able to receive appropriate care if his condition were to worsen due to the

5

uniquely severe outbreak at [Fort Dix]." *United States v. Clem*, Crim. Action No. RDB-14-0405, 2021 WL 82947, *3 (D. Md. Jan. 11, 2021). This is a difficult case, but the court ultimately finds that though continued incarceration poses health risks to Pierce, a reduction in sentence to time served, at 48 months, simply does not adequately protect the public or reflect the seriousness of Pierce's offense. Considered together, the § 3553(a) factors weigh against granting compassionate release.

## CONCLUSION

For the foregoing reasons, Pierce's motion for compassionate release (ECFs 45, 50) will be denied. The associated motions to seal (ECFs 51, 53, 62) will be granted to protect the confidentiality of personal information. A separate order follows.

  2/1/2021  
Date

/S/  
Catherine C. Blake  
United States District Judge